# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | |
|---|---|
| MARITIMES & NORTHEAST PIPELINE, LLC, | ) ) ) |
| Plaintiff | ) ) |
| v. | ) ) CIVIL No. 08-30-B-H |
| 6.85 ACRES OF LAND IN HANCOCK AND PENOBSCOT COUNTIES, MAINE, et al., | ) ) ) ) ) |
| Defendants | ) |

## DECISION AND ORDER ON MOTION FOR PRELIMINARY INJUNCTION FOR IMMEDIATE ENTRY

Maritimes & Northeast Pipeline, LLC ("Maritimes") is constructing facilities to add regasified liquified natural gas ("LNG") to its pipeline services from Canada. It has obtained a Certificate of Public Convenience and Necessity from the Federal Energy Regulatory Commission ("FERC") for that purpose.[1] Possession of that certificate gives it certain condemnation powers under 15 U.S.C. § 717f(h), provided that just compensation is paid to the landowners.

In this condemnation proceeding, Maritimes seeks a preliminary injunction to allow it immediate possession and entry onto property known as Woodchopping Ridge via a corridor known as the Stud Mill Road so as to

---

[1] See FERC, Maritimes & Northeast Pipeline, LLC, Order Issuing Certificate and Amending Presidential Permit, Docket Nos. CP06-335-000, CP06-335-001, CP96-810-006 (Feb. 21, 2007) ("FERC Order"). A copy of the FERC Order is attached, as Exhibit C, to Maritimes' Complaint (Docket Item 1).

construct a compressor station at Woodchopping Ridge. At oral argument, Maritimes' lawyer limited its request for injunctive relief regarding the Stud Mill Road to construction access (i.e., temporary access). The defendant Echo Easement Corridor, LLC ("Echo") claims property rights in these locations and has objected on various grounds.

After oral argument and upon consideration of affidavits and exhibits, I **GRANT** the motion for a preliminary injunction.

### THE STANDARDS FOR A PRELIMINARY INJUNCTION

Maritimes must meet four requirements to obtain a preliminary injunction: (1) a likelihood of success on the merits of its condemnation claim; (2) irreparable injury if the injunctive relief is denied; (3) a balance of harms in its favor as compared to the injury to the defendant; and (4) an effect on the public interest that is not detrimental. See Esso Standard Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006); Gorman v. Coogan, 273 F. Supp.2d 131, 133–34 (D. Me. 2003).

*(1)   Likelihood of Success*

To succeed on the merits of its condemnation claim, Maritimes must show:

> (a) The existence of a FERC certificate that covers the property it proposes to condemn;
>
> (b) An inability to obtain the property by private contract; and
>
> (c) Value of the property exceeding $3,000.

See 15 U.S.C. § 717f(h); Maritimes & Northeast Pipeline, LLC v. Decoulos, 146 Fed. Appx. 495, 498 (1st Cir. 2005) (noting that "[o]nce a CPCN is issued by the

2

FERC, and the gas company is unable to acquire the needed land by contract or agreement with the owner, the only issue before the district court in the ensuing eminent domain proceeding is the amount to be paid to the property owner as just compensation for the taking"). I approach them in reverse order.

It is undisputed that the property value here exceeds $3,000.

Echo contends that Maritimes has not engaged in good faith negotiations to acquire the disputed property interests privately and voluntarily. I have previously held that there is no good faith negotiation requirement in § 717f(h). <u>Portland Natural Gas Transmission Sys. v. 1.28 Acres of Land</u>, Order on Pls.' Mot. for Summ. J., No. 98-50, slip op. at 5–7 (D. Me. June 5, 1998). The First Circuit agrees. <u>Decoulos</u>, 146 Fed. Appx. at 498 ("Absent any credible authority making good faith negotiation a requirement precedent to the condemnation action, we decline the invitation to create one in this case.") (internal citations omitted).

Echo maintains that Maritimes did not even notify it of any intent to acquire its interest in the Stud Mill Road until very recently. Aff. of David C. Hooper, ¶ 8, attached to Def. Echo's Opp'n to Pl.'s Mot. for Prelim. Inj. (Docket Item 29). The reason was that Maritimes believed that it had sufficient ownership of easement rights by private deed that it did not need consent from Echo.[2] In any event, Maritimes had a private independent appraisal performed of the interests it proposes to take, it offered Echo more than the appraisal,

---

[2] In that connection, Count II of the Complaint seeks declaratory relief that Maritimes already had deeded rights of access over Stud Mill Road. I do not address that issue in this Decision and Order.

and Echo rejected the offer. Aff. of Franklin S. Gessner, ¶¶ 13–14 (Feb. 22, 2008), attached to Pl.'s Mot. for Prelim. Inj. (Docket Item 17). No more is required. See Portland Natural Gas Transmission Sys., slip op. at 5–7.

Finally, Echo claims that Maritimes' FERC certificate does not cover the property it proposes to condemn.[3] I disagree. The Quad Map and Aerial Site Plan filed with the application for the certificate sufficiently identify the location of the Woodchopping Ridge compressor station and the Stud Mill Road, identifying the latter as an "access road." Aff. of Franklin S. Gessner, ¶ 4 & Exs. A, B (Feb. 27, 2008) (Docket Item 33). Later filings with FERC continue to identify the locations. Id. ¶¶ 6, 8 & Exs. C, E.

Echo argues that the Environmental Conditions (attached to the FERC order granting the certificate) limit Maritimes to condemning "facilities" and that "facilities" as defined in the certificate nowhere includes the Stud Mill Road. What the Environmental Conditions actually say is this: "The authorized facility locations shall be shown in the [Environmental Assessment], as supplemented by filed alignment sheets . . . . Maritimes' exercise of eminent domain authority granted under [§ 717f(h)] in any condemnation proceedings related to the Order must be consistent with these authorized facilities and locations." FERC Order, Appx. B: Environmental Conditions for Maritimes' Phase IV Project, ¶ 4 (emphasis added). This precise language does not

---

[3] I do not understand Echo to argue that Exhibits A and B to the Complaint fail to comply with Fed. R. Civ. P. 71.1.

support Echo's narrow interpretation that Maritimes' condemnation authority is specifically limited to only the expressly authorized facilities.

In granting a certificate, FERC has the power to authorize "the whole or any part of the operation . . . covered by the application" and to attach conditions to the certificate "as the public convenience and necessity may require."  15 U.S.C. § 717f(e).  In accordance with the Environmental Assessment, the FERC Order authorizes Maritimes "to construct and operate facilities, as described more fully in this order and in the application."  FERC Order ¶ 43.  While the FERC order does not specifically mention the Stud Mill Road, it expressly authorizes the proposed compressor facilities at Woodchopping Ridge.  See id. ¶ 7.  As explained supra, Maritimes' application to FERC clearly identified the Stud Mill Road as an "access road" to the Woodchopping Ridge property.  FERC did not attach any conditions to, or otherwise limit, Maritimes' application in a way that would exclude access to the Stud Mill Road as part of the approved operations.

The statute granting condemnation authority to the holder of a FERC certificate states:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.

5

15 U.S.C. § 717f(h). It is clear that the FERC certificate (in conjunction with the statutory condemnation authority) covers the access Maritimes seeks.[4]

I conclude that Maritimes has shown a virtual certainty of success on the merits.

### (2)   *Irreparable Injury*

One of the conditions attached to the FERC Order is that Maritimes construct and make available for service the facilities within two years of issuance of the FERC Order. See FERC Order ¶ 43. Because of the upcoming mud season, Maritimes needs immediate access to move its heavy equipment to the site while the ground remains frozen. Echo quibbles over Maritimes' projected construction schedule thereafter, but it is inescapable that delay now will hugely increase the risk of being unable to complete the pipeline service in a timely fashion. Given the Certificate of Public Convenience and Necessity for the LNG pipeline services, that amounts to irreparable injury.

### (3)   *Balance of Harms*

Since Echo will be justly compensated for any taking, this factor favors Maritimes.

### (4)   *Public Interest*

The issuance of the FERC certificate demonstrates that the public interest is furthered by moving the project forward.

---

[4] I note Echo's request for an adjustment of the location, Hooper Aff. ¶ 16, but that is an issue for FERC, not for this court.

6

**CONCLUSION**

For these reasons, I conclude that the motion for preliminary injunction should be **GRANTED**.

Fed. R. Civ. P. 65(c) permits issuance of a preliminary injunction only if the movant provides a bond. Neither party has proposed a specific amount. I **DIRECT** that a bond be posted in the amount of One Hundred Thousand Dollars ($100,000).[5]

Maritimes **SHALL PREPARE THE TEXT** of a preliminary injunction that complies with Fed. R. Civ. P. 65 and is consistent with my ruling here. It shall fax or email it to Echo's counsel for comments as to form, and Echo shall have four (4) hours to respond. Upon posting of the bond, the preliminary injunction shall issue.

Counsel **SHALL CONFER AND PROPOSE** by March 28, 2008, a scheduling order for the remainder of the case, taking into account the special requirements of Fed. R. Civ. P. 71.1. If they are unable to agree, they shall file competing proposals.

**SO ORDERED.**

**DATED THIS 29TH DAY OF FEBRUARY, 2008**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[5] Apparently Echo has asserted that the easement interest sought by Maritimes in the Stud Mill Road is worth between $200,000 and $475,000. Gessner Aff. ¶ 18 (Feb. 22, 2008). No documentation has been provided to support that assessment, and I consider it to be part of the negotiating strategy. The parties have not furnished other evidence of potential damages or risk to support a bond amount.