UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| **MARITIMES & NORTHEAST PIPELINE, LLC,** )<br>)<br>) | |
| **PLAINTIFF** )<br>) | |
| v. ) | CIVIL NO. 08-30-B-H |
| ) | |
| **6.85 ACRES OF LAND IN HANCOCK AND PENOBSCOT COUNTIES, MAINE, ET AL.,** )<br>)<br>)<br>) | |
| **DEFENDANTS** ) | |

## DECISION ON PLAINTIFF'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

This is a dispute over the meaning of language in a written easement. It concerns a 2,000-foot-wide Easement Corridor running over Maine timberlands from Woodland (Baileyville, Washington County) on the U.S.-Canadian border to Milford on the east side of the Penobscot River.[1] The plaintiff Maritimes & Northeast Pipeline, LLC ("Maritimes") requests summary judgment on Count II. It asks for a declaratory judgment that, by deed transfer, it possesses rights to use the Stud Mill Road and a spur from it, both located within the Easement Corridor, to construct, operate, and maintain a natural gas compressor station on land it owns adjacent to the Corridor.

---

[1] ECHO believes that the Easement Corridor will be part of an east-west toll road in Maine; the Vice President of ECHO estimates that the economic impact for ECHO from this toll road could be over $353 million. See Aff. of David C. Hooper, ¶ 5 (Docket Item 29-4) (incorporated by ECHO into the summary judgment record).

I conclude that the language of the easement is not ambiguous. Maritimes is entitled to use the Stud Mill Road and the necessary spur to access the parcel on which it plans to build the compressor station. But the defendant ECHO Easement Corridor, LLC ("ECHO") is entitled to move the Stud Mill Road or provide equivalent alternative access.

**FACTUAL BACKGROUND**

International Paper Company ("Int'l Paper") previously owned the Easement Corridor and surrounding timberland. In 2004, Kennebec West Forest, LLC ("Kennebec West") purchased much of the land from Int'l Paper and now owns the fee interest in the bulk of the land underlying and adjacent to the Easement Corridor. Maritimes' Statement of Undisputed Material Facts, ¶¶ 19–22 (Docket Item 51) ("Pl.'s SMF"); Def. ECHO's Opp'n SMF, ¶¶ 19–22 (Docket Item 54) ("Def.'s Opp'n SMF").

In 2005, Int'l Paper, SP Forests, LLC ("SP") (a wholly-owned subsidiary of Int'l Paper), ECHO (a wholly-owned subsidiary of SP), and Kennebec West agreed on the Amended and Restated Road and Utility Corridor Easement, which is the subject of this dispute.[2] Pl.'s SMF, Ex. E (the "Easement"). That agreement defines the "Easement Corridor" (or "Corridor"). Id. ¶¶ 14–18; Def.'s Opp'n SMF ¶¶ 14–18. Within the 2,000-foot wide Corridor is an old forty-five-mile long, approximately sixty-six-foot wide, private gravel road that timber companies historically have used, known as the Stud Mill Road. Pl.'s SMF

---

[2] The agreement superseded two prior easement grants (the Stud Mill Utility Corridor Easement and the Road and Utility Corridor Easement).

2

¶¶ 1–4, 6; Def.'s Opp'n SMF ¶¶ 1–4, 6.[3]  The Stud Mill Road runs from the Town of Milford in Penobscot County, on through northern Hancock County and into Washington County.  Pl.'s SMF ¶ 3; Def.'s SMF ¶ 3.

The operative language creating the Easement Corridor is as follows:

> This is an easement in gross, but it is expressly agreed and expected by [Kennebec West], [Penobscot Forest, LLC], SP and ECHO that ECHO shall have the right to, and will from time to time, assign and grant such rights and/or subsets thereof to others in ECHO's sole discretion, provided that any such assignment or grant of the right to operate a road shall be made only to a federal, state, or municipal transportation authority or similar governmental or quasi-governmental entity.  It is a primary purpose of this easement that ECHO shall receive and consider all requests from those who wish to use roads or locate utility easements within the Easement Corridor, grant such easements as it deems advisable (subject to the terms and conditions of this easement) and manage and regulate the use and operation of all easements within the Easement Corridor.  The easements granted by ECHO shall be considered partial assignments of the rights granted to ECHO by this easement and shall not diminish the right and authority of ECHO to continue to grant further and additional easements to others.  The rights conferred by this easement are exclusive, so that neither SP nor their successors nor assigns shall have the right to use the Easement Corridor for the stated purposes and uses (except as permitted by ECHO in compliance with this easement) nor to grant any similar rights therein to others.  *Notwithstanding the foregoing, [Kennebec West], [Penobscot Forest, LLC], SP, their successors, and assigns shall continue to have and reserve the use of Stud Mill Road within the Easement Corridor, subject to the right of ECHO to relocate the same or provide substitute equivalent alternative access.*

Pl.'s SMF, Ex. E, at 2 (emphasis added).[4]

---

[3] ECHO objects to Maritimes' characterization of the Stud Mill Road as approximately sixty-six feet wide, as not supported by the record citation.  Def.'s Opp'n SMF ¶ 4.  The width is not material to this decision, but it provides helpful context for understanding the layout of the properties at issue.  ECHO's own Vice President, Thomas F. Connor, in a deposition excerpt filed by ECHO agreed that while the Stud Mill Road varies in width, sixty-six feet wide is about the "right order of magnitude."  See Dep. of Thomas F. Connor, at 14 (Docket Item 55-2).

[4] ECHO states that there was a scrivener's error in regard to the Easement language that states, "[t]he rights conferred by this easement are exclusive, so that neither SP nor their
*(continued on next page)*

3

Maritimes is a natural gas pipeline company. Its existing pipeline assets run within the Corridor, approximately twenty-five feet from the southern boundary of the Stud Mill Road.[5] In 2007, Kennebec West transferred to Maritimes a fee interest in a parcel of land that lies just north of the Easement Corridor (the "Woodchopping Ridge property"). Pl.'s SMF ¶¶ 26–28, Ex. F; Def.'s Opp'n SMF ¶¶ 26–28. The parties agree that, by this deed transfer, Maritimes acquired the same rights to use the Stud Mill Road to access that property as Kennebec West possessed under the Easement. See Pl.'s SMF ¶ 31; Def.'s Opp'n SMF ¶ 31. Maritimes obtained the parcel of land for construction of the Woodchopping Ridge Compression Station, part of its new Phase IV utility project. Def.'s SMF ¶ 38; Pl.'s Reply SMF ¶ 38. The compressing station (north of the Easement Corridor) and the existing pipeline (south of the Stud Mill Road) will be connected by suction and discharge lines that cut perpendicularly across the Stud Mill Road. See Def.'s SMF ¶ 39; Pl.'s Reply SMF ¶ 39.[6]

---

successors nor assigns shall have the right to use the Easement Corridor for the stated purposes and uses (except as permitted by ECHO in compliance with this easement) nor to grant any similar rights therein to others." ECHO says that the reference to SP should have included Kennebec West, Penobscot Forest, LLC, SP, and ECHO. If ECHO is correct, that alteration still does not detract from the effect of the subsequent sentence in the Easement ("Notwithstanding the foregoing") that reserves to Kennebec West (its successors and assigns) all the rights to use the Stud Mill Road that are at issue.

[5] Maritimes obtained the easement for the pipeline, along with the rights to access the Stud Mill Road to operate and maintain that pipeline, from Int'l Paper's predecessor, Champion International Corp. Pl.'s SMF ¶¶ 8–9; Def.'s Opp'n SMF ¶¶ 8–9; Def. ECHO's SMF, ¶¶ 30–31 (Docket Item 54) ("Def.'s SMF"); Maritimes' Reply SMF, ¶¶ 30–31 (Docket Item 57) ("Pl.'s Reply SMF").

[6] Maritimes believes that the facts regarding its intended use of the parcel of land are irrelevant to its summary judgment motion. Pl.'s Reply SMF ¶¶ 38–39. But the dispute between the parties on this summary judgment motion is precisely about the type of uses of the Stud Mill Road that the Easement permits.

4

The core of the present dispute is the extent of the rights to use the Stud Mill Road that Maritimes obtained when it purchased the parcel from Kennebec West.  In this lawsuit, Maritimes seeks to use the Stud Mill Road not for its pipeline, but for access to the parcel *outside* the Corridor, where it will construct the compressing station.[7]  ECHO maintains that Kennebec West's (and thus Maritimes') rights in the Stud Mill Road are limited to the traditional uses (logging, camping, etc.) of the Stud Mill Road and do not include Maritimes' desired use to access its parcel to build a compression station.  Maritimes disagrees, arguing that Kennebec West's and Maritimes' rights to use the Stud Mill Road to access their properties are not so limited.[8]

## ANALYSIS

The Easement language is precise in describing Kennebec West's (Maritimes') rights and ECHO's rights.  ECHO has fulsome rights with respect to the broader Easement Corridor.  But ("Notwithstanding the foregoing") with respect to the narrower and shorter Stud Mill Road portion of the Corridor, Kennebec West (Maritimes) continues to have and continues to reserve the *use* of Stud Mill Road without limitation, except for explicit rights given to ECHO.  Specifically, ECHO has the right to *move* the location of the Stud Mill Road or provide equivalent alternative access.

---

[7] See Pl.'s Reply SMF ¶ 38.  In its statement of material facts, ECHO says that the compressing station will be built "along and within the Corridor."  Def.'s SMF ¶ 38.  But the record citation for that statement, the affidavit of David C. Hooper, ¶¶ 13–15, does not say that the parcel is located within the Corridor, but rather that the lines Maritimes will need to connect the compressing station to its existing pipeline will run through the Corridor.

[8] Kennebec West and Penobscot Forest, LLC, other named defendants in this lawsuit, have no objection to Maritimes' request for partial summary judgment.  See Resp. of Defs. Kennebec West Forest LLC and Penobscot Forest LLC to Maritimes' Mot. for Summ. J. (Docket Item 52).

"The construction of language in an easement deed is a question of law. If the language of the deed is unambiguous, the scope of a party's easement rights is determined solely from that language." Crispin v. Town of Scarborough, 736 A.2d 241, 249 (Me. 1999) (citations omitted).  I see no ambiguity in the Easement language.  The right to use and the right to move or relocate an easement are two entirely different and consistent rights.  The Easement reserves for Kennebec West (and Maritimes) the right to use the Stud Mill Road.  The only limitation is ECHO's right to relocate the Stud Mill Road or provide alternative access.  I reject ECHO's argument that the verb "continue" in the Easement limits Kennebec West's and Maritimes' rights to the *traditional* uses of Stud Mill Road:  what "continues" is Kennebec West's right to use the Stud Mill Road to access its properties.

ECHO argues that the intent of the parties supports its argument that Kennebec West "reserved only the traditional access and use rights in relation to the Stud Mill Road."  It derives this "intent" from the Easement language that states that one of its "primary purpose[s]" is that ECHO will "receive and consider all requests from those who wish to use roads or locate utility easements within the Easement Corridor, grant such easements as it deems advisable . . . and manage and regulate the use and operation of all easements within the Easement Corridor."  But ECHO's right to manage the Corridor generally, is not inconsistent with the rights explicitly reserved to Kennebec West to use the Stud Mill Road.  ECHO can control the use and location of facilities within the Corridor, *subject to* the rights of the owners of the

6

underlying and surrounding land to use Stud Mill Road, and even as to them ECHO can relocate the Stud Mill Road or provide alternative access.[9]

In conjunction with its right to use the Stud Mill Road to access the Woodchopping Ridge property, Maritimes states that it also has the right to access the spur road through the Corridor that connects the Stud Mill Road to its property. See Maritimes' Mot. for Summ. J., at 16 n.8 (Docket Item 50). ECHO does not dispute this last point.

## CONCLUSION

I **GRANT** summary judgment to Maritimes on Count II of its Complaint, requesting a declaratory judgment. Pursuant to its deed with Kennebec West, Maritimes has the right to use the Stud Mill Road, between what are marked points A and G in the conveyance maps of the deed, and a spur from the Stud Mill Road (Road 33-00-0), marked from point G to H, for the purpose of accessing the Woodchopping Ridge property for construction, maintenance, and operation of natural gas pipeline facilities. ECHO has the right to move the Stud Mill Road or provide Maritimes alternative equivalent access to the Woodchopping Ridge property.

DATED THIS 14TH DAY OF AUGUST, 2008

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[9] In its opposition brief, ECHO emphasizes its right to control the location of "utility easements" within the Corridor. Maritimes, at this point, is asking only for the non-exclusive right to use the Stud Mill Road to access its Woodchopping Ridge property, not an easement to locate facilities within the Corridor.